**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**MARK S. BUCKNER SR.**                                                    **PLAINTIFF**

**V.**                                                    **NO. 3:19-CV-264-DMB-DAS**

**WEST TALLAHATCHIE**
**SCHOOL DISTRICT, et al.**                                                    **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

Mark Buckner sued West Tallahatchie School District and various school officials alleging ADA claims of employment discrimination and failure-to-accommodate and a state law breach of contract claim. The defendants have moved for summary judgment on all of Buckner's claims. Because Buckner has not shown he was able to perform the essential functions of his duties with or without accommodation and because he has failed to establish the defendants breached an employment contract, summary judgment will be granted.

**I**
<u>**Procedural History**</u>

On November 26, 2019, Mark S. Buckner Sr. filed a pro se complaint[1] in the United States District Court for the Northern District of Mississippi against West Tallahatchie School District and the following individuals: Superintendent Christopher Furdge; Principal Devora Berdin; Business Manager Madalyn Johnson; School Board President Gloria Carter; Board Secretary Tracey Mims; and Board Members Lucinda Berryhill, Cora Hooper, and Marvin George. Doc. #1. Buckner alleged that the defendants violated the Americans with Disabilities Act ("ADA") by terminating his employment after he exhausted his paid and unpaid leave and by denying him

---

[1] The document's title states that it is an amended complaint but it is the first document filed commencing this case.

accommodations for his disability and that his termination violated his employment contract. *Id.* at 2, 5, 11. With leave of the Court,[2] Buckner filed an amended complaint[3] on January 23, 2020, alleging the same claims against the same defendants. Doc. #16.

On January 27, 2020, the defendants moved to dismiss the individual defendants for failure to state a claim. Doc. #17. The defendants answered the original complaint the same day. Doc. #19. After being served the amended complaint, the defendants filed an answer to it, Doc. #23, and a second motion to dismiss incorporating the arguments in their original motion to dismiss and memorandum brief, Doc. #22.

By order issued September 16, 2020, the Court denied the first motion to dismiss as moot and granted the second motion to dismiss in part. Doc. #27 at 6. Specifically, the Court dismissed the ADA claims against the individual defendants because the individual defendants "do not satisfy the statutory definition of employer." *Id.* at 5. However, because Bucker's breach of contract claim was "not addressed or even mentioned in the defendants' motion to dismiss, memorandum brief, or reply," the Court denied the motion to dismiss in that respect. *Id.* at 5–6.

On August 31, 2021, the defendants filed a motion for summary judgment on all remaining claims. Doc. #52. In support of the motion, the defendants submitted, among other things, the declarations of Johnson, Berdin, and Furdge. Docs. #52-2, #52-4, #52-5.

In response to the motion for summary judgment, Buckner initially filed a 401-page document on November 3, 2021. Doc. #61. Because the document was "not only difficult to comprehend as to its form and substance but also violate[d] this Court's Local Rules in certain

---

[2] Doc. #7.

[3] The amended complaint adds allegations regarding Buckner's exhaustion of his administrative remedies. *Compare* Doc. #1 at 13 *with* Doc. #16 at 13–15.

ways," the Court struck the document and allowed Buckner a period of time to file a separate response and memorandum in compliance with the Local Rules. Doc. #62.

Within the time allowed by the Court, Buckner filed (1) an "Objection to District Order Addressing Plaintiff's Documents Use for Summary Judgment,"[4] Doc. #63; (2) an "Affidavit for Plaintiff Mark S. Buckner Sr Memorandum of Law," Doc. #64; (3) an "Affidavit in Support of Plaintiff Mark S. Buckner Sr's Response," Doc. #65; (4) an "Affidavit of Michael Shepherd Sr.," Doc. #69; and (5) various exhibits, Doc. #70. Buckner also filed three separate motions to strike portions of the declarations submitted by the defendants. Docs. #66, #67, #68.

The defendants replied in support of their summary judgment motion on December 6, 2021. Doc. #73. Stating that they "remain[ed] unclear as to which document, if any, [was] Plaintiff's Response to their Motion for Summary Judgment" and "due to the volume of information submitted," the defendants filed a motion to exceed by ten pages the page limit imposed by the Local Rules. Doc. #74. Buckner did not respond to the motion for excess pages. On January 3, 2022, Bucker filed a "Reply to Defendant's Reply." Doc. #81.

## II
## Motions to Strike

In his motions to strike, Buckner requests "[p]ursuant to Rule 12(f) of the Federal Rules of Civil Procedure, … an Order striking to remove parts of the witness's testimony" contained in the

---

[4] In his objection, Buckner states he "feels prejudiced by not being allowed to add in ALL [his] exhibits that are being relied upon to support [his] defense to respond to the Defendants argument" and "cannot present a full answer to all the claims the defendant has put forward." Doc. #63 at 2–3. However, the Court did not strike Buckner's initial response based on the number or content of his exhibits but rather because of violations of various Local Rules. *See* Doc. #62 at 2–3. The Court advised Buckner that the Local Rules are available on the Court's website, the Local Rules require exhibits to be identified by both a letter or number and a meaningful description, and "only one copy of each exhibit *need* be submitted instead of multiple copies of portions believed to be relevant." *Id*. at 3 n.20 (emphasis added). Accordingly, Buckner's objection is overruled.

3

declarations submitted by the defendants "[b]ased upon finding of … contradiction to previous testimony." Doc. #66 at 2; Doc. #67 at 2; Doc. #68 at 2.

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Because a declaration is not a pleading under the Federal Rules,[5] Rule 12(f) does not apply to Buckner's request to strike portions of the declarations. Rather, Buckner's argument that the portions of the declarations are inconsistent with past statements or inaccurate representations of the facts goes to the heart of the summary judgment motion and whether there is a genuine issue of material fact. Accordingly, the motions to strike are denied but the substance of the motions will be considered in deciding the motion for summary judgment.

### III
### Motion for Excess Pages

Local Rule 7(b)(5) provides that a movant's "original and rebuttal memorandum briefs together may not exceed a total of thirty-five pages." "Page limitations are important, not merely to regulate the Court's workload, but also to encourage litigants to hone their arguments and to eliminate excessive verbiage." *Fleming v. Cnty. of Kane*, 855 F.2d 496, 497 (7th Cir. 1988) (citation omitted). Accordingly, leave to exceed a page limitation "should only be sought in exceptional circumstances." *Id.*

Here, the defendants argue that "due to the volume of information submitted" by Buckner, the ten extra pages requested are "necessary in order to allow [them] to properly reply to Plaintiff's Response." Doc. #74 at 2. Because Buckner has not indicated any opposition to the defendants'

---

[5] *See* Fed. R. Civ. P. 7(a) (listing pleadings allowed).

excess pages request and because the Court finds good cause for the excess pages, the motion for leave is granted and the defendants' reply is deemed properly filed.

## IV
## Buckner's Surreply

"While it is true that the Federal Rules of Civil Procedure do not expressly allow for a surreply by a nonmovant, a sur-reply is appropriate when the movant's rebuttal raises new legal theories or attempts to present new evidence at the reply or rebuttal stage." *16 Front St. LLC v. Miss. Silicon, LLC*, 162 F. Supp. 3d 558, 560 (N.D. Miss. 2016) (cleaned up). But "surreplies are heavily disfavored by courts." *Id.*

Buckner filed his "Reply to Defendant's Reply" without leave of the Court. The defendants' reply did not raise a new legal theory or attempt to present new evidence. Accordingly, Buckner's surreply will be stricken from the record.

## V
## Motion for Summary Judgment

The defendants seek summary judgment on all of Buckner's remaining claims.

### A. Standard of Review

A court shall enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (cleaned up). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (internal quotation marks omitted).

The "party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact." *Jones*, 936 F.3d at 321 (alterations

omitted). When the movant would not bear the burden of persuasion at trial, he may satisfy his initial summary judgment burden "by pointing out that the record contains no support for the non-moving party's claim." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019). If the moving party satisfies his initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Jones*, 936 F.3d at 321 (cleaned up).

## B. Relevant Facts

The West Tallahatchie School District "is a public school district, funded by the State of Mississippi." Doc. #52-2 at 2. It "operates three distinct schools:" R.H. Bearden Elementary School, West Tallahatchie High School, and the North Delta Alternative School. *Id.* Through the Mississippi Adequate Education Program, the School "District's kindergarten through third grade teachers may be given teacher's aides, … paid for by the federal government. The District must self-fund any teacher's aides offered to its teachers servicing grades four through twelve." *Id.* Carter, Mims, Berryhill, Hooper, and George were members of the School District's School Board during the school years relevant here. Doc. #70 at PageID 1201.

### 1. Buckner's hire and request for an assistant

Berdin was the principal at R.H. Bearden Elementary School from July 2016 to June 2020. Doc. #52-4 at 1. She interviewed Buckner, who has glaucoma,[6] for a teaching position for the 2016-2017 school year. *Id.* at 2. During the interview, Berdin had knowledge of Buckner's visual impairments and discussed the possibility of a teacher's assistant with him. Doc. #52-1 at 58–59. "Upon [Berdin's] recommendation, [the School District] hired Mr. Buckner to serve as a 5th Grade Science teacher for the 2016-2017 school year." Doc. #52-4 at 2. As a teacher, Buckner's essential

---

[6] Doc. #52-1 at 34.

duties include providing instruction for the classroom, performing assessments and remediation, monitoring students "to make sure they're safe," and transporting students around the school. Doc. #52-1 at 44, 54.

Despite hiring Buckner as a science teacher, Berdin moved Buckner to the math department because there was a shortage of math teachers.[7] Doc. #52-4 at 2. The primary functions of a science teacher and a math teacher are "pretty much" the same. Doc. #52-1 at 44. "For a period of time … until he was appropriately acclimated to the department and its curriculum, [Berdin] required three other teachers, Mr. Samuel Hudson, Mr. Miller and Ms. Williams remain in the room with" Buckner. Doc. #52-4 at 2.

In 2017, Buckner requested that the School District "place a teacher's assistant in his classroom to aid him in monitoring and supervising his students. In response, the [School] District requested that [he] provide medical documentation regarding his alleged limitations to engage in the interactive process with him." *Id.* Buckner "provided a note from his physician outlining his recommended accommodations, which included a teacher's assistant or other visual aids." *Id.*; *see* Doc. #52-1 at PageID 548.

Subsequently, Berdin, Michael Shepherd,[8] and Eddie McCord[9] met with Buckner to discuss "the duties of a teacher and work[] together to determine the most appropriate accommodations." Doc. #52-4 at 2.

> Although [the School District was] able to provide Mr. Buckner with a temporary teacher's assistant during the 2016-2017 school year because of the rotating Math teachers, after discussing the District's staffing and budget, [the School District] determined [it was] unable to provide a permanent teacher's assistant to Mr. Buckner for the 2017-2018 school year. Specifically, [the School District] considered the shortage of staff and budget, including the important fact that in

---

[7] Buckner still taught fifth grade. Doc. #52-1 at 43.

[8] Shepherd is "the District's 504 disability coordinator." Doc. #52-4 at 2.

[9] McCord is "the District's curriculum administrator." *Id.*

order to provide the teacher's assistant, the District was solely responsible for funding the position. Unlike for teachers in kindergarten through third grade, [the School District] would have been financially responsible for hiring and compensation [sic] a full-time employee to remain in the classroom with Mr. Buckner. Based on these budget constraints, [the School District] determined [it was] unable to afford a permanent teacher's assistant for Mr. Buckner at that time.

*Id.* at 3.[10]  However, the School District "provided … a number of alternative accommodations throughout [Buckner's] employment."  *Id.*  These accommodations included completion of Buckner's cumulative records by other staff members; relocation of Buckner's "classroom to a location that provided easy access to the gym, auditorium, cafeteria, and parking;" and purchase of colored chairs for Buckner's classroom at his request.[11]  *Id.* at 3–4.  Buckner also has access to visual aids, including "a reader, a big screen television magnifier," OrCam,[12] CCTV, and a pen frame.[13]  Doc. #52-1 at 120–21, 128.  According to the defendants, these aids were provided by Vocational Rehab in collaboration with the School District.  *Id.* at 123–25.  Shepherd's affidavit states that the School District "did not purchase or help in purchasing any of the visual aids for [Buckner] from Vocational Rehab."  Doc. #69 at 2.

### 2.  Medical leave and termination

"Buckner requested and received approved leave under the Family Medical Leave Act ('FMLA') for the period of December 18, 2017 through February 5, 2018" for surgery on his left eye due to his glaucoma.  Doc. #52-2 at 3.  "Buckner did not return to work on February 6, 2018"

---

[10] Buckner argues this statement "[c]onflicts with the schools [sic] former attorney Rob Tyner's documented district and Board position" that the School Board could not provide a teacher's assistant when it had not been recommended by the superintendent.  Doc. #66 at 2–3; *see* Doc. #70 at PageID 1140.  Because the statement simply explains why a teacher's assistant was not recommended, the Court does not consider the statements inconsistent.

[11] According to Buckner, the chairs were provided for other classes as well.  Doc. #66 at 3.  Whether chairs were provided to other teachers is not material to the Court's resolution of the summary judgment issues.

[12] OrCam is a device fitted on Buckner's glasses that identifies students.  Doc. #52-1 at 120.

[13] The pen frame helped Buckner "account for … the Chromebooks that [were] in or leaving [his] classroom."  *Id.* at 128.

but instead "remained off work until he had surgery on his right eye on March 6, 2018, and following that date for recovery." *Id.* "On March 19, 2018, the [School] District received a letter from Mr. Buckner's physician stating … Buckner would need additional time off from work for the period of March 19, 2018 through May 29, 2018." *Id.*; *see* Doc. #70 at PageID 1119. "Buckner's request was approved for the leave to which he was entitled under FMLA." Doc. #52-2 at 3.

"[A]s of March 29, 2018, … Buckner had almost exhausted all leave available under the FMLA." *Id.* Johnson[14] sent him "a notice explaining that his 12 weeks under the FMLA would expire on April 10, 2018," and advised him that the School District expected he would "return to work on April 11, 2018 but, if unable to return to work on April 11, 2018, he was required to inform the District of his intent to return to work." *Id.*; *see* Doc.# 70 at PageID 1120. In response, Buckner provided the School District "a note from his physician, stating 'it will probably take him at least two more months to be fully healed and I recommend that he be off work of work [sic], if possible, for the entire duration of this time as his activity level is currently limited to sedentary tasks." Doc. #52-2 at 3–4 (alterations omitted); *see* Doc. #70 at PageID 1121.

According to Superintendent Furdge[15] and Johnson, because the physician's letter did not provide "a definitive return to work date" and Buckner did not provide "any additional documentation … which would signify a definite return to work date," his "employment contract was terminated on April 18, 2018." Doc. #52-5 at 2; Doc. #52-2 at 4; *see* Doc. #70 at PageID 1118. Buckner was "compensated … for the entire remainder of money owed him under the 2017-2018 contract." Doc. #52-2 at 4. Furdge made the decision to terminate Buckner because

---

[14] Johnson is the School District's Business Manager and is "responsible for a number of administrative tasks, including assisting employees [with] various attendance, leave and benefits related matters." Doc. #52-2 at 1.

[15] Furdge served as the School District's superintendent from July 2016 to June 2020. Doc. #52-5 at 1.

"Assistant Principal Sheila Outlaw had been teaching his classes" and the School District was "unable to continue effectively operating the School without the functions provided by the Assistant Principal as she indefinitely filled" Buckner's position.[16]  Doc. #52-5 at 2–3; *see* Doc. #70 at PageID 1169.

Following his termination, Buckner requested a hearing before the School District's board. Doc. #52-1 at PageID 557.  After receiving such a hearing, Buckner was informed that he "got [his] job back."  *Id.* at 176.

### C.  Analysis

The defendants argue the School District is entitled to summary judgment on Buckner's ADA claims because Buckner "admits he is not disabled within the meaning of the ADA" and "has failed to show that he was qualified to perform the essential functions of his role as a teacher." Doc. #53 at 2.  They further argue that the School District "accommodated every reasonable request made by [Buckner] of which [it] was aware;" Buckner's "*temporary* termination was the result of his inability to provide [the School District] a date of his return to work;" and Buckner cannot establish that "this legitimate, non-discriminatory reason was pretext for any type of unlawful animus."  *Id.* at 2–3.  With respect to the breach of contract claim, the defendants argue Buckner cannot prove they "breached the agreement between them or that he has been damaged by the alleged breach—both essential elements of his claim."[17]  *Id.* at 3.

Although his response is hard to decipher, Buckner at base argues that he is "qualified for the ADA because he has permanent impaired vision and he has in his use several visual aids to

---

[16] Buckner argues Outlaw was a data instructor rather than an assistant principal at the time of his leave.  Doc. #68 at 3–4; *see* Doc. #70 at PageID 1235.  Outlaw's position with the School District is not material to the Court's evaluation of the summary judgment motion.

[17] Contrary to the defendants' argument, under Mississippi law, "monetary damages are a remedy for breach of contract, not an element of it."  *Maness v. K & A Enterprises of Miss., LLC*, 250 So. 3d 402, 416 (Miss. 2018). Accordingly, Buckner need not submit any proof of damages for his contract claim to survive summary judgment.

help [him] through his daily functions;" his disability is "obvious;" and he is qualified for his position because the physician's letter indicated he could perform sedentary duties. Doc. #65 at 16, 19, 23. He also argues that "[l]eave provided as an accommodation under the ADA may run concurrently with FMLA-protected leave" and "[a]n employer must provide leave under whichever statutory provision provides the employee with greater rights and protection"[18] but asserts that the School District did not engage in the interactive process following his physician's note requesting an additional two months off work and does not have a policy that would require him to be terminated following the exhaustion of his FMLA leave. Doc. #64 at 7. Further, Buckner submits that his physician's note was sufficient to notify the School District when he would return to work and points to Shepherd as an example of someone who "exhausted all his paid and unpaid leave and FMLA … and was not terminated." Doc. #65 at 4, 28. Finally, in support of his breach of contract claim, Buckner argues his termination "was a breach of contract, which is an adverse action, and [he] was not paid for the month of May 2018." *Id.* at 29–30.

The defendants reply that Buckner's "inability to provide [the School District] a date of his return to work" is a legitimate, non-discriminatory reason for his termination and Buckner cannot show that it "was pretext for any type of unlawful animus." Doc. #73 at 2. Additionally, they argue Buckner has failed to satisfy his burden of identifying specific evidence in the record to support his claims and show a genuine dispute as to material fact. *Id.* at 4–5. Finally, they submit that "the vague, indefinite letter from [Buckner's] physician did not provide a return date as requested" and Buckner's requests for a teacher's assistant and indefinite leave were not reasonable under the law. *Id.* at 7–8.

---

[18] Doc. #65 at 19.

The ADA prohibits an employer from discriminating on the basis of disability by, among other things, terminating a qualified individual's employment. *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017).

> To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability.
>
> The ADA also requires an employer to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. To prevail on a failure-to-accommodate claim, the plaintiff must show[:] (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations.

*Id.* (cleaned up).

"In a discriminatory-termination action under the ADA, the employee may … proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 … (1973) …." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Under this framework, once the plaintiff establishes a prima facie case of discrimination, the defendant "must articulate a legitimate, nondiscriminatory reason for terminating" the plaintiff, after which the "burden shifts back to the [plaintiff] to show that [the] proffered reason is pretextual." *Id.*

### 1. Qualified individual

The defendants argue Buckner cannot establish that he is a qualified individual under the ADA because he "failed to show that he was qualified to perform the essential functions of his role as a teacher."[19] Doc. #53 at 2.

---

[19] The defendants also argue that Buckner cannot show he has a disability based on his response to an interrogatory in which the School District asked him "to provide specifics as to his alleged disability[ and] he responded affirmatively, 'no disability suffered.'" Doc. #53 at 20; *see* Doc. #52-6 at 4. However, "interrogatory responses are not binding judicial admissions" but "may be used as evidence for assessing summary judgment." *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 527 n.21 (5th Cir. 2010).

A "qualified individual" under the ADA is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To prove he is a qualified individual, Buckner must show either he "could perform the essential functions of the job in spite of [his] disability *or* … a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job." *Claiborne v. Recovery Sch. Dist.*, 690 F. App'x 249, 254 (5th Cir. 2017) (quoting *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996)).

Buckner's own deposition testimony establishes that one of the essential functions of a teacher is monitoring students' safety. Doc. #52-1 at 44. But due to his visual impairment, Buckner cannot adequately monitor the students. *See id.* at 46 (Buckner stating he only knew a student was having a seizure in class "because of … the children … in the room"); *id.* at 48 (Buckner admitting his inability to see students "throwing things"). Accordingly, Buckner cannot perform all the essential functions of his job in spite of his disability. So, as it concerns the monitoring of students, the question becomes whether a reasonable accommodation would allow Buckner to adequately perform that essential function.

Reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). The Fifth Circuit has held that "the ADA does not require the employer to relieve the employee of any essential functions of the job, modify the actual duties, *or reassign existing employees or hire new employees to perform those duties*." *Claiborne*, 690 F. App'x at 254–55 (emphasis added) (collecting cases).

13

The only accommodation Buckner contends would allow him to properly monitor students is a teacher's assistant. Because such an accommodation would, at a minimum, leave "performance of … essential duties to other employees," such is beyond the requirements of the ADA. *See Pegues v. Miss. State Veterans Home*, 736 F. App'x 473, 477 (5th Cir. 2018) (affirming jury verdict on failure-to-accommodate claim where accommodation requested would require plaintiff not to perform essential duties of her position). Accordingly, Buckner has not shown that he is a qualified individual and therefore cannot establish a prima facie case with respect to either his failure-to-accommodate or termination claim.

## 2. Termination

Even if the Court found Buckner had established a prima facie case of disability discrimination, his termination claim would fail. The School District has provided a legitimate, nondiscriminatory reason for the termination—Buckner's failure to provide the School District with a date he would return to work. Thus, the burden shifts back to Buckner "to demonstrate pretext" or show that the employment decision "was based on a mixture of legitimate and illegitimate motives and that the illegitimate motive was a motivating factor in the decision." *LHC Grp., Inc.*, 773 F.3d at 702 (cleaned up).

"Pretext is established either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (internal quotation marks omitted). While Buckner attempts to point to Shepherd as someone who was treated differently than him, there is no evidence Shepherd failed to provide the school with a date of return while on extended medical

14

leave.[20] *See Robles v. Tex. Tech Univ. Health Scis. Ctr.*, 131 F. Supp. 3d 616, 627–29 (W.D. Tex. 2015) (plaintiff failed to show pretext where coworkers he alleged were treated differently did not engage in conduct "nearly identical" to his own). And there is simply no evidence in the record— beyond Buckner's own belief—that Buckner's termination was motivated by his disability rather than his failure to provide a date of return. *See Delaval*, 824 F.3d at 480 ("A subjective belief of discrimination cannot be the basis of judicial relief.") (cleaned up).

### 3. Accommodation

Similarly, even if Buckner established he is a qualified individual under the ADA, his failure-to-accommodate claim would fail. With respect to his request for a teacher's assistant, the evidence in the record establishes that the School District would be responsible for compensating an assistant while already facing staff and budget shortages. Buckner has not provided any evidence to rebut the School District's assertion that it would suffer a hardship if required to provide him an assistant.[21] *See Anderson v. Harrison Cnty.*, 639 F. App'x 1010, 1015 (5th Cir. 2016) (affirming dismissal of ADA claim where the employer presented evidence that allowing the plaintiff's requested accommodation would result in a hardship to the employer because "the facility often was short-staffed" and plaintiff "failed to submit any evidence that either rebutted or undermined" employer's evidence).

Buckner's argument that the School District failed to provide him with additional leave also fails. "Time off, whether paid or unpaid, can be a reasonable accommodation, but an employer

---

[20] Shepherd had a kidney transplant on February 16, 2016; "returned to work on July 16, 2016;" "became acutely ill" on July 18, 2016; and "did not return back to work until January 30, 2017," exhausting all of his "paid and unpaid leave as well as all FMLA" leave without being terminated. Doc. #69 at 3.

[21] Buckner testified there were teacher's assistants at the high school but he was unsure if they were in the classroom or the library and could not identify a specific class they served in. Doc. #70 at PageID 1249. Such vague assertions are insufficient to carry his burden at the summary judgment stage. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).

is not required to provide a disabled employee with indefinite leave." *Delaval*, 824 F.3d at 481–82. When it became clear Buckner would exhaust his leave before the May 29 date listed in his doctor's excuse,[22] the School District asked him to "inform the District of his intent to return to work." Doc. #52-2 at 3. In response, though his physician provided a second note indicating Buckner "would probably need at least two more months," Buckner failed to provide "a definitive return to work date." Doc. #52-5 at 2. Because Buckner did not provide the requested date of return, the School District was not required to provide him with "indefinite leave." *See Silva v. City of Hidalgo*, 575 F. App'x 419, 423 (5th Cir. 2014) (plaintiff who was terminated following expiration of FMLA leave failed to show she was denied a reasonable accommodation under the ADA where her doctor indicated she should be off work "for *at least* another three months").

### 4. Breach of contract

The individual defendants argue that Buckner's breach of contract claim against them "fails because they are not party to any agreement with [him]." Doc. #53 at 30. With respect to the breach of contract claim against the School District, the defendants argue they were entitled to terminate Buckner's employment because the contract required Buckner to "be available to perform assigned duties beginning on 8/01/2017 and ending on 5/29/2018" and "perform assigned duties during the school term,"[23] and Buckner "was unable to perform the essential functions of his role with or without a reasonable accommodation." *Id.* Buckner responds that the "school board had the ultimate duty to fire" him; it did so on Furdge's recommendation; and because he "was terminated before the expiration of the academic year, … [a] state law breach-of-contract claim existed." Doc. #65 at 29–30.

---

[22] Doc. #70 at PageID 1119.

[23] Doc. #52-1 at PageID 545

"Under Mississippi law, a plaintiff asserting any breach-of-contract claim has the burden to prove by a preponderance of the evidence (1) that a valid and binding contract exists; and (2) that the defendant has broken or breached it without regard to the remedy sought or the actual damage sustained." *Norman v. Anderson Reg'l Med. Ctr.*, 262 So. 3d 520, 527 (Miss. 2019). "A breach is material when there is a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats the purpose of the contract." *Watkins & Eager, PLLC v. Lawrence*, 326 So. 3d 988, 991 (Miss. 2021) (cleaned up).

The contract between Buckner and the School District requires Buckner to "perform assigned duties during the school term" and provides that "in consideration for the duties performed …, the [School District] agrees to compensate [Buckner]." Doc. #52-1 at PageID 545. Because the record shows Buckner could not perform the essential functions of the position with or without reasonable accommodations at the time he was terminated, the School District did not breach the contract.[24]

### 5. Summary

Buckner has not provided evidence to create a genuine fact question on whether he is a qualified individual under the ADA, the School District's nondiscriminatory reason for his termination was a pretext, or he was denied a reasonable accommodation. For these reasons, the defendants are entitled to summary judgment on Buckner's ADA claims. And because Buckner has failed to establish that the defendants breached the employment contract, they are also entitled to summary judgment on his breach of contract claims.

---

[24] Because Buckner has failed to show a breach of the contract, the Court declines to address whether the individual defendants were parties to the contract.

**VI**
**Conclusion**

In accordance with the conclusions above:

1.      Buckner's motions to strike [66][67][68] are **DENIED**.

2.      The defendants' motion for leave to file excess pages [74] is **GRANTED**.

3.      Buckner's unauthorized surreply [81] is **STRICKEN**.

4.      The defendants' motion for summary judgment [52] is **GRANTED**. A final judgment will issue separately.

      **SO ORDERED**, this 2nd day of June, 2022.

/s/Debra M. Brown_____
**UNITED STATES DISTRICT JUDGE**